SHEILA P. BETTS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Betts v. Commissioner
Docket No. 23520-87
United States Tax Court
T.C. Memo 1990-100; 1990 Tax Ct. Memo LEXIS 104; 58 T.C.M. (CCH) 1530; T.C.M. (RIA) 90100; February 28, 1990
*104 Held: Petitioner found to be an innocent spouse. Steven H. McClesky and Paul R. Lawler, for the petitioner. Amy Deyar Seals, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies and an addition to tax in the Federal income tax liability of petitioner and her former husband, Michael L. Betts, for the years and in the amounts as follows: Additions to Tax
Tax
Sec.
Sec.
Sec.
Sec.
Year Ended
Deficiency
6653(b) [1]
6653(b)(1)
6653(b)(2)
6661
12-31-80
$  3,463
$ 1,732
--
--
--
12-31-81
15,849
7,925
--
--
--
12-31-82
28,684
--
$ 14,342
50% of the
$ 7,171
interest on
$ 26,789
12-31-83
7,686
--
3,843
50% of the
1,922
interest on
$ 4,754
Joint Federal income tax returns were filed for each of these years by petitioner *105 and her former husband and a statutory notice was issued to both of them. However, prior to the trial of petitioner's case, Mr. Betts and respondent settled his tax liability. At trial respondent made an oral motion to sever his case from that of petitioner which motion was granted by Order of this Court dated April 18, 1989. The only issue before the Court is petitioner's entitlement to innocent spouse status. Respondent has conceded the fraud addition as to petitioner. Respondent has also conceded innocent spouse status for the years 1980, 1981, and 1982. With respect to 1983, respondent has conceded that petitioner meets the requirements of section 6013(e)(1)(a), (b), and (d) and that petitioner had no actual knowledge of the understatement with respect to the year 1983. Thus the narrow issue for decision is whether for 1983 petitioner had reason to know that there was a substantial understatement. FINDINGS OF FACT In July 1987 when the petition in this case was filed, petitioner and Mr. Betts were married and residing together in Memphis, Tennessee, which was their home during the years 1980 through 1983. Mr. Betts was employed by Mid-Continent Systems, Inc. until *106 sometime in 1983. During those years, he embezzled funds from his employer by presenting or causing to be presented to his employer false invoices reflecting alleged sales of merchandise by Tennessee Graphics Company, a company wholly owned by Mr. Betts. The embezzled funds were deposited in the Memphis Bank and Trust Company in an account opened in the name of Tennessee Graphics Company. The sum embezzled during the year 1983 was $ 17,999. None of the embezzled sums was reported on income tax returns filed by petitioner and her former husband for the years 1980 through 1983. During 1981, 1982, and 1983 a portion of the embezzled funds was transferred by Mr. Betts from the Memphis Bank and Trust Company account into the joint checking account of Mr. and Mrs. Betts at Union Planters National Bank. During 1983 the amount transferred was $ 17,823 or almost the entire amount embezzled during that year. The embezzlement was discovered during 1983 and Mr. Betts was indicted on August 15, 1983. In March 1984 Mr. Betts plead guilty to 10 counts of transporting securities, i.e., checks taken by fraud across state lines in interstate commerce. He was sentenced to 1 year in prison on *107 count I. On count II he was placed on probation for 3 years. The remaining counts were dismissed. He was required to report to prison to commence his sentence on April 20, 1984. During petitioner's marriage to Mr. Betts he exclusively handled the family finances. Mr. Betts prepared the Federal income tax returns filed by himself and his wife including the return for the year 1983 which is dated April 6, 1984. After the indictment Mrs. Betts was told by Mr. Betts that he was indicted for carrying stolen checks across the state line. He never explained to Mrs. Betts the Federal income tax returns which he prepared, merely submitting them to her for her signature. Specifically with respect to the return for the year 1983, petitioner simply signed the return when requested to do so by her then husband. Mrs. Betts had check-writing authority on their joint checking account but she never saw the check register or the bank statements and relied entirely upon her husband for authority to make expenditures. Whenever petitioner wrote a check, for example for groceries, she would report the amount and date to her husband. Petitioner was not involved in any fashion in any of Mr. Betts' *108 business activities. During the period of the embezzlement, petitioner was not informed directly or indirectly as to the receipt of the additional income or as to the transfer of funds into the joint checking account. It was not until after Mr. Betts went to prison and after the 1983 income tax return was filed that petitioner through discussion with Mr. Betts' attorney found out about the embezzlement. Mr. Betts at some point did tell petitioner that he had taken some checks from his employer and deposited them in a bank, which explanation was consistent with the language of the indictment. Between the indictment and sentencing Mr. Betts tried to commit suicide twice. The couple's standard of living did not increase during the period of the embezzlement. OPINION As we have stated, the single issue before the Court is whether petitioner had reason to know of the substantial omission of income from the 1983 joint income tax return pursuant to section 6013(e)(1)(C). We have recently held that The standard to be applied in making the determination as to constructive knowledge is whether a reasonably prudent person with the knowledge of facts possessed by the person claiming *109 innocent spouse status should have been alerted to the possibility of a substantial understatement. . This is a factual inquiry. ; . P-H Memo T.C. par. 89,107 at 517. As in Bell Mr. Betts excluded petitioner from knowledge of his business affairs. Even if petitioner had understood and thoroughly reviewed the 1983 tax return, there was nothing in it to alert her to the facts of the embezzlement and the receipt of the embezzled funds. Petitioner's standard of living did not increase during the period of the embezzlement. Nothing occurred which would have alerted the hypothetical "reasonably prudent person" that some inquiry of Mr. Betts was necessary. Thus we find here, as we did in Bell, that petitioner has carried her burden of showing that she had no reason to know of the omitted income. Decision will be entered for the petitioner. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩